**ALLSTATE INS. CO.   v.  LAY et al.**

No. 12648.

Court of Civil Appeals of Texas.

Galveston.

Feb. 18, 1954.

Rehearing Denied March 11, 1954.

Geo. Red and K. D. Keenan, Houston, for appellant.

Blakeley & Williams, Carey Williams, Houston, for appellees.

CODY, Justice.

This suit grew out of a collision which happened in Houston on May 19, 1952, between a Plymouth sedan which was driven by appellee and a Hudson sedan which was driven by a Mr. Miller, who is not a party to this action. Mr. Miller carried indemnity insurance with appellant, the Allstate Insurance Company. Appellee carried his indemnity insurance with the Boston Insurance Company. Appellee has brought this action against appellant upon a contract of settlement or compromise and settlement based upon the following allegations, among others: That following the collision his automobile was moved to the Spraggins Body Shop in Houston. That thereafter appellee made his claim for damages resulting from the collision to Mr. Miller's insurance carrier, appellant. That an adjuster of appellant, a Mr. E. Carlson, who was thereunto duly authorized, entered into a settlement agreement with appellee whereby it was agreed that appellant would pay for the repairs to appellee's automobile and that appellee should release his automobile to A. C. Burton Company to make the repairs and that in reliance upon such agreement appellee caused his automobile to be released to the Burton Company and the repairs were begun thereon pursuant to the agreement. That subsequently appellant refused to pay for the repairs. That the cost of the repairs was $291.41, which was reasonable. That appellee was compelled to pay said sum to A. C. Burton Company to obtain possession of his automobile. That by reason of said agreement "and the fact that Plaintiff [appellee] changed his position in reliance thereon, and that defendant [appellant] refused to perform its said contract, defendant is liable * * *" to appellee for his damages in the sum of $291.41.

Appellant answered, first urging a plea in abatement upon the grounds (1) that it appears from appellee's allegations that appellee is suing on account of a policy issued to Miller, appellant's insured, which indemnified Miller from loss arising out of the ownership of Miller's automobile, and (2) that such a suit may not be urged against appellant, the insurance carrier unless and until the aggrieved party has reduced his claim against the insured to judgment. Such plea in abatement was duly overruled.

Appellant then answered to the merits by filing a general denial and then plead (though not in form of a plea in abatement) that the Boston Insurance Company was a necessary party, in that said insurance company paid A. C. Burton Company the sum of $241.41 for the repairs to appellee's automobile and was thereupon given by appellee a certificate of satisfaction, and a subrogation agreement, which invested the Boston Insurance Company to appellee's claim to the extent of $241.41. That thereby the Boston Insurance Company became jointly interested in the claim sued on by appellee to the extent of the sum so paid by the Boston Insurance Company, to-wit: $241.41, etc.

Before the trial appellee filed a motion to suppress all evidence that he carried indemnity insurance. In the motion it is stated that the Boston Insurance Company "by its duly authorized attorney of record hereby enters its appearance and consents and agrees to be bound by any judgment rendered in said cause," and appellee's attorneys signed the motion, not only as his attorneys but also as attorneys for "co-plaintiff, Boston Insurance Company."

Appellant filed a motion for a directed verdict both at the conclusion of appellee's evidence and at the conclusion of all of the evidence, which was refused, and after the coming in of the verdict moved for judgment notwithstanding the verdict. The case was submitted to the jury upon special issues, which, as answered by the jury, were to the effect:

(1) That E. Carlson agreed appellant would settle and compromise the claim "by paying the cost at A. C. Burton Company of repairing the damages to Plaintiff's automobile."

(2) That appellee materially changed his position in reliance upon the agreement of E. Carlson that appellant would so pay the cost of said repairs.

(3) That appellee's automobile was transferred from Spraggins Body Shop to A. C. Burton Company at appellee's special instance and request.

The court rendered judgment upon the verdict, reciting in the judgment that "such additional considerations and findings as were authorized by law having been had and made, the Court was of the opinion that Plaintiff's claimed damages in the amount of $291.41 were excessive by the sum of $30.00 and ordered a remittitur of such sum, failing which the Court would order a new trial; whereupon Plaintiff having filed such remittitur, the Court is of the opinion that judgment should be rendered" for appellee for the sum of $261.41.

No express disposition was made of the Boston Insurance Company by the judgment. It is also to be noted that the rec-

ord fails to show, except as recited in the judgment, that any remittitur was filed. We fail to see what function could have been served by the filing of a remittitur since no issue of damages was submitted to the jury and, of course, no verdict fixing the damages was returned by the jury.

In response to appellant's application to the court to make findings of fact found by him separately from the conclusions of law, the court found:

(a) That at the time of the collision Miller was indemnified against loss therefrom by a policy of insurance issued by appellant and that by the terms thereof appellant was required to defend suits for damages against Miller, etc., and

(b) That in the latter part of May, 1952, appellee made a claim to appellant for damages resulting to his automobile from the collision, and

(c) That E. Carlson, appellant's agent, admitted to appellee that its insured (Miller) was liable for the damages and agreed that appellant would pay the cost of repairs at A. C. Burton Company, and

(d) That appellee accepted and acted upon appellant's offer and released his automobile from Spraggins Body Shop (which had made a bid on the cost of repairs cheaper than the bid made by A. C. Burton Company); and permitted appellant to remove the automobile to the Burton Company to be repaired, and

(e) That the cost of repairs so made by Burton Company was $291.41, which was excessive in the amount of $30, and

(f) That A. C. Burton Company was authorized by E. Carlson to make the repairs in question, and

(g) That three days after Burton Company had started on the repairs, the said Carlson advised Burton Company that appellant would not pay therefor.—The court's legal conclusion, so far as deemed material, was that the contract between the parties was valid and had been breached by appellant, wherefore appellant is liable to appellee in the sum of $261.41.

Appellant made a general exception to the court's conclusions, that the same were not substantiated by the evidence nor the law. Appellant did not request any further or additional conclusions, either of fact or law.—Appellee excepted to the court's conclusion that the cost of $291.41 was excessive by $30 because there was no evidence but that the $391.41 was the reasonable and necessary cost of the repairs.

■ The parties have violated the briefing rules in that they have filed what is apparently original briefs, presenting the case in installments, or piece-meal, and repetitiously. As we construe appellant's briefs, they predicate its appeal upon five points, to the effect (1) that the undisputed evidence established a complete failure of consideration for the alleged contract, and the court should have directed a verdict for appellant, (2) that the court should have permitted appellant to prove on cross-examination of appellee that the Boston Insurance Company was the real party at interest and that appellant had only a $50 interest in this action, which was below the jurisdiction of the County Court, and (3) that the court erred in rendering full judgment for appellee when the record discloses that the Boston Insurance Company was a co-plaintiff, and a proper judgment would have reflected the interest of the Boston Insurance Company and would have provided therein that it take nothing, and (4) that the record here shows that appellee wholly failed to prove the amount of damages involved, and (5) that there is no evidence to support the judgment of $261.41.

Appellant's third point may be subject to the construction that the judgment rendered by the trial court was not a final judgment in that it failed to dispose of one of the parties. Said point, as presented in appellant's second original brief, reads, "The court erred in entering judgment for E. A. Lay, when the record clearly indicates that the Boston Insurance Company was a co-plaintiff. A proper judgment should, therefore, have reflected the interest of the Boston Insurance Company, and that it take nothing."

■ Every court must necessarily pass on whether it has jurisdiction over a cause, and the most frequent grounds upon which an appellate court rules that it does not have jurisdiction is because the judgment of the trial court is not final in that it fails to dispose of some of the issues or some of the parties before the trial court. It is mere hornbook law that a "final judgment is one that determines the rights of all of the parties to the suit and disposes of all of the issues involved." See 25 Tex. Jur. 369; Id. 366 et seq.; and Sec. 54 et seq., Appeal and Error, 3 Tex.Jur. page 109 et seq. The requirement of the finality of judgment is satisfied if a party or an issue, which was before the trial court, is disposed of by necessary implication.

■ We have concluded that the judgment rendered by the court did dispose of the Boston Insurance Company by necessary implication. This, because the only relief which appellant apparently sought against the Boston Insurance Company was to have said company made a party, to the end that any right which said company had acquired by reason of said subrogation from appellee should be disposed of in this proceeding. The Boston Insurance Company was made a party to the action and upon the face of its pleadings consented and asked to be bound by any judgment rendered in the case. The Boston Insurance Company did not seek any relief against either appellant or appellee, and appellee sought no relief against the Boston Insurance Company. That the judgment finally disposed of the Boston Insurance Company is apparent from the fact that the judgment in favor of appellee cut off any rights which the Boston Insurance Company could have urged against appellant. The plea of the Boston Insurance Company rendered it unnecessary for the court to determine specifically the exact interest which the Boston Insurance Company had become subrogated to. However, upon the face of appellant's pleadings, the amount of the interest of the Boston Insurance Company was fixed and determined as being $241.41. Appellant, having so plead, is bound. Appellant's third point is overruled.

We next take up appellant's first point, which is to the effect that there was a complete failure of consideration, and overrule it.

■ The burden was on appellant to prove its allegation of failure of consideration. Appellant did not ask for the submission of any issue on failure of consideration. However, we believe that appellant meant to urge want of, rather than failure of consideration. Since we believe that appellant intended to assign "want of consideration," rather than "Failure of consideration," we have jurisdiction to pass on the point. We do not understand that appellant by its point means that appellee did not offer ample evidence to support the allegations of his petition as to the agreement which was made between the parties. As we understand it, it is appellant's position that, in order for there to be a consideration for the compromise and settlement the contract must have expressly stated appellee was releasing Miller from any liability. Here appellant had the right, under the terms of its policy, to settle any claim arising thereunder. While appellee's claim against appellant had not matured in the sense of having been reduced to judgment, there was a dispute as to whether Miller was liable. This dispute was revived after the agreement was entered into, and appellee's automobile moved to Burton's for repairs. The "mutual agreement" for the compromise is itself a valuable consideration and sufficient to support the contract, the consideration being the release of the rights of the parties and the avoidance of the expense and annoyance of a suit. 9 Tex.Jur. 340. It is obvious to us that, had appellee, after entering into said agreement, sought to annoy Miller with a lawsuit, appellant could have set up as a bar, the contract here sued on by appellee. Of course, appellee did not make Miller a party defendant, nor did appellant. There is no reason, we believe, for holding that a release of Miller was not implicit in the agreement. See also Houston Transit Company v. Goldston, Tex.Civ.App., 217 S.W.2d 435, and the authority there cited.

■ We do not believe that the court committed reversible error in refusing to permit appellant to prove on cross-examination of appellee, E. A. Lay, that the Boston Insurance Company had a policy of insurance on Miller, and had paid $241.41 to A. C. Burton Company and had received from appellee an assignment of, or been subrogated to appellee's claim to that extent. It is true that this was not an action by appellee to recover personal injuries, but a suit upon a contract, and consequently such cases as Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811 (holding that it is prejudicial in personal injury suits to let in evidence that the adverse side has insurance), are not in point. Here the appellant was seeking no relief against the Boston Insurance Company, and the Boston Insurance Company had merely plead that it consented and agreed to whatever judgment was rendered. It was no concern of appellant how much of the claim, which was jointly owned by appellee and the Boston Insurance Company, was owned respectively by them, since both would be bound by the judgment rendered. While the rule does not apply here which was applied in Myers v. Thomas, we think that the court's action in refusing to admit the evidence was not erroneous for the reason stated, namely, that such evidence was immaterial since the judgment rendered upon the claim jointly owned by appellee and Boston Insurance Company foreclosed said parties, or either of them from bringing any further action thereon. If, however, appellant was entitled to have the jury informed that the claim was jointly owned in part by an insurance company for the prejudicial effect that such knowledge would have upon the jury, the court permitted such information to be given the jury upon voir dire examination of the jury panel. While the point is not before us, in this type of case (suit upon a contract and not a tort), it would have been error not to permit the parties to inform the jury as to the parties interested in the suit, so that the attorneys could intelligently exercise their challenges. We overrule appellant's second point.

█ ; We overrule appellant's fourth point to the effect that appellee wholly failed to prove the amount of damages (i. e.) the cost of repairs at Burton Company. E. A. Lay testified that the cost of repairs, which were made by Burton Company on account of the collision, was $291.41. Furthermore, it was plead by appellant that the Boston Insurance Company had paid the Burton Company, as its obligation to appellee under the policy, the cost of the repairs made by Burton Company to the extent of $241.41. Such admissions made in appellant's pleadings are evidence *against appellant* of the highest dignity. It is otherwise made to appear that the policy provided for $50 deductible. We cannot hold that the evidence would not have been sufficient to have supported a verdict for $291.41.

What we have just said in discussing appellant's fourth point requires that we overrule appellant's fifth point to the effect that there is no evidence to support the judgment against it for $261.41, for we have held the evidence would have supported a judgment for $291.41.

█ Appellee's cross-point complains of the rendition of the judgment against appellant for $261.41, instead of $291.41. The evidence is to the effect that the cost of the repairs occasioned by the collision was $291.41. The only occasion for any doubt as to the right amount has arisen because appellee, when his automobile was being repaired, had other repairs done which were not required by reason of the collision. We have had difficulty in passing on appellee's cross-point. If the jury had found the damages to amount to $291.41, and the court had required a remittitur of $30 to be filed, we would have had no difficulty in restoring the amount.

The finding of the amount of damages in the sum of $291.41 must depend, in part, primarily upon the testimony of appellee. It is clear that the court did not credit his testimony. Being a party to the suit, had the trial been to a jury on the amount of damages, a directed verdict for $291.41 would not have been proper. In the state of the record, we cannot disturb the amount of damages found by the court except by reversing the judgment, and remanding the case for a new trial. We have not the power to exercise the fact finding power which resides in the jury, or the trial court acting as a jury. We do not understand that appellee seeks to have the cause remanded, but seeks to have this Court revise the exercise of the trial court's fact finding power. We overrule appellee's cross-point.

The judgment should be affirmed, and it is so ordered.

Affirmed.