Truman SMITH et al., Appellants,

v.

Ollie B. DAVIS, Appellee.

No. 17095.

Court of Civil Appeals of Texas, Fort Worth.

March 13, 1970.

Rehearing Denied April 17, 1970.

Nelson, Montgomery & Robertson, and Charles A. Hotchkiss, Wichita Falls, for appellants.

Nelson, Sherrod, Carter & Oldham, and Charles Oldham, Wichita Falls, for appellee.

## OPINION

BREWSTER, Justice.

Plaintiff, Ollie Davis, sued Truman Smith, Coy Smith, Edward Herles and wife, Shirley, and William T. Nolan and wife, Lois Ann, for the unpaid balance of principal and interest owing on an installment note that was originally in the amount of $6,450.00, for a reasonable attorney's fee, and for foreclosure of a deed of trust lien on a house and lot.

The note was executed by Edward and Shirley Herles on September 10, 1962, and was given to plaintiff as part payment for the purchase price of a house and lot. The deed of trust lien was given on the house and lot to secure the payment of the note. A recovery was sought against the other defendants by plaintiff on the theory that in later transactions they had agreed to assume the payment of the unpaid balance of the note and had thus become personally liable on such note.

A jury trial was had and at its conclusion judgment was rendered that plaintiff recover of and from Truman Smith, Coy Smith, and Edward Herles and wife, Shirley, jointly and severally, the sum of $12,610.29 together with 10% interest from date of judgment until paid, costs of suit and for foreclosure of the deed of trust lien on the house and lot that was security for the note. Three thousand one hundred dollars ($3,100.00) of this judgment was for a reasonable attorney's fee, as provided for in said note.

The judgment also decreed that Edward T. and Shirley Herles have judgment over against Truman Smith and Coy Smith for indemnity for the amount of judgment recovered therein against Mr. and Mrs. Herles. Both Nolans were dismissed from the case.

From this judgment the defendants, Truman and Coy Smith, have appealed. Mr. and Mrs. Herles have not appealed.

After Mr. and Mrs. Herles acquired the house and lot from the plaintiff, Ollie Davis, and gave the note in question as part payment for such house and lot, they later traded such house and lot to defendants, Truman and Coy Smith.

The deed transferring title to the house and lot to the Smiths contained the following provisions:

" * * * and the further consideration of assumption by the said Truman Smith and Coy B. Smith of the unpaid balance *due* and *owing* on that certain Deed of Trust Note * * *. It being understood and agreed that the Grantees in this Deed shall and do become personally liable for the payment of the balance *due* the said Ollie B. Davis on the above described note and lien; * * *." (Emphasis supplied.)

The Smiths' deed was recorded and they later sold the house and lot to the defendants, Mr. and Mrs. Nolan, and this last deed had in it the identical provisions that were in the Smith deed relative to those grantees assuming the note.

The Smiths' first and second points on this appeal are that the trial court erred in overruling (a) their motion for instructed verdict and (b) their motion for judgment notwithstanding the verdict.

The basis of the contention of the Smiths under their first two points is that a proper construction of the words used in the deed to them is that they agreed to assume and pay only that part of the note in question that was *past due* and *unpaid* at the time the deed to them

was executed. They urge that since on the date of such deed all installments of the note that had accrued and become due up to that time, including both principal and interest, had been fully paid, that the legal effect of the words used in the deed to the Smiths was to create no liability whatever of the Smiths to anyone under the express wording of the assumption agreement. The trial judge construed the agreement as one by which the Smiths assumed the payment of all the unpaid balance of the note.

We overrule the Smiths' first and second points.

The assumption agreement in question is ambiguous because it is susceptible of more than one meaning.

■ A contract contains ambiguous language if the language used is susceptible of more than one meaning. See Jones v. Dumas Development Co., 229 S.W.2d 936 (Amarillo Civ.App., 1950, ref., n. r. e.) and 64 Tex.Jur.2d 48.

The Commission of Appeals in Oden v. Gates, 119 Tex. 76, 24 S.W.2d 381 (1930), was construing a Texas Statute and said:

"The word 'due' has a double meaning: (1) That the debt or obligation to which it applies has by contract or operation of law become immediately payable; (2) an existing indebtedness without reference to the time of payment, in which it is synonymous with 'owing,' and includes all debts, whether payable in praesenti or in futuro. 3 Words & Phrases, First Series, p. 2213.

"The word is used on different occasions to express distinct ideas. Its meaning must necessarily depend upon the context and evident purpose intended. United States v. State Bank of North Carolina, 31 U.S. (6 Pet.) 29, 8 L.Ed. 308."

A number of cases from throughout the nation that recognize the fact that the word "due" has this double meaning are cited in 28 C.J.S. Due p. 574.

To the same effect is the case of Neblett v. Barron, 160 S.W. 1167 (Fort Worth Civ.App., 1910, no writ hist.).

The Smiths here urge that since the assumption contract is ambiguous that the rule of construction that should be here applied is the one known as "the rule contra proferentem." It is to the effect that if words of a contract appear to have been inserted to benefit one of the parties, he will be considered as having chosen the language used. And further, that any ambiguity in such words will therefore be construed most strongly against the person for whose benefit the words were inserted. A part of the rule also is that any ambiguity in a contract will be resolved against the person who prepared the instrument. For a discussion of this rule, see Vol. 4, Page on the Law of Contracts, Sec. 2054, page 3553.

We do not believe that this rule of construction should be applied here in order to determine the intent of the parties.

The following is also from Vol. 4, Page on the Law of Contracts, Sec. 2054, page 3558:

"The rule contra proferentem is not one of the favored rules of construction. Indeed, it is said that it is to be resorted to only when the other rules fail."

To the same effect see T. M. Sinclair & Co. v. National Surety Co., 132 Iowa 549, 107 N.W. 184 (1906).

■ In this case, since there is an ambiguity in the contract, the parties were entitled to show the surrounding facts and circumstances that attended the making of the contract. These facts could be considered in determining the intent of the parties to the contract. 13 Tex.Jur.2d 294, Sec. 126.

One such circumstance proven by the undisputed evidence in the case was that on the date of the execution of the deed in question, although there was an unpaid balance on the note, all installments

of principal and interest that had fallen due under the provisions of the note in question up to that date had been paid in full.

Under these circumstances, if the assumption agreement was construed as requested by the Smiths, then such assumption agreement would be nullified, meaningless and of no force and effect whatever. The Smiths insist that since the only part of the note that they agreed to assume was that part which was past due and unpaid, and since all accrued payments on the note had been fully paid, that they were not liable for anything under the assumption agreement.

■ One rule of construction applicable to contracts is that a court is required to presume that the parties to an instrument intended every word in it to have some meaning, effect and purpose. Masterson v. Gulf Oil Corporation, 301 S.W.2d 486 (Galveston Civ.App., 1957, ref., n. r. e.).

■ Another rule of construction applicable to contracts is that the court will, if possible, give effect to all parts of an instrument and an interpretation that gives effect to all parts of an instrument and a reasonable meaning to all its provisions will be referred to one that leaves a part of a writing useless. Green Avenue Apartments v. Chambers, 239 S.W.2d 675 (Beaumont Civ.App., 1951, no writ hist.).

We believe that these last two rules of construction just referred to are applicable here. We must assume that both parties to the deed in question knew at the time the deed was executed that no installments on the note were past due and that they intended that their assumption agreement have some purpose, use, and meaning.

■ Applying these rules of construction to the assumption contract in question in the light of the undisputed facts and circumstances that attended the execution of the deed in question, we are of the opinion that the trial court correctly held that the parties to the transaction intender that the Smiths assume and pay all of the unpaid balance of the note in question, regardless of whether it had become due as of the date of the deed or not.

■ We believe that under the particular facts of this case that this question of the intention of the parties was a law question to be determined by the court from a consideration of the entire written instrument and the undisputed evidence showing the facts and circumstances in existence at the time the deed was signed.

If we are wrong in holding that this question of intent was a law question under the facts of this case, then such holding matters not, because upon the trial the question was submitted to the jury in the charge and they also answered the question adversely to the Smiths.

The Smiths' third point contends that the trial judge erred in refusing to grant their motion to disregard the stipulated answer to Special Issue No. A.

Issue No. A inquired as to what sum of money, including interest, was owed on the note at the time of the trial. The parties stipulated that if such issue was submitted to the jury that the jury's answer would be $9,510.29. In view of this stipulation this issue was not submitted to the jury.

The Smiths say that even though they did so stipulate there still had to be evidence in the record that would have justified the jury in finding that this amount was due.

They say there is no such evidence because: (1) there is no evidence of proper acceleration of the note which was necessary in order to have matured all of the unpaid balance of the note, and (2) there is no proof of a proper presentment of the note and demand for payment which were also necessary before plaintiff could exercise her option to accelerate.

We overrule this point. We believe there is evidence in the record showing a demand was made on the Smiths for payment of the delinquent installments.

The Smiths did not at that time refuse to pay the installments due on the grounds that the note was not presented to them, but refused on the grounds that they had sold the house and lot that were security for the note, and were therefore no longer involved with the matter.

The case of Dickson v. Dickson, 324 S.W.2d 422 (Houston Civ.App., 1959, no writ hist.), held that where the maker of a note did not base his failure to pay the note on the fact that the note had not been presented to him, but based his refusal to pay on other grounds, that the requirement that the note be presented to him for payment was waived.

The following is from the opinion in Dickson on page 425: "* * * The law applicable is well stated in the annotation to the case of Porter v. East Jordan Realty Co., 11 A.L.R. at page 978, as follows:

"'But it is generally held that the paper need not actually be exhibited unless such exhibition is demanded. (Cites cases.) It was stated in Legg v. Vinal (1896) 165 Mass. 555, 43 N.E. 518, that while the maker of a note is entitled, upon demand for payment to have the note exhibited to him, yet if he does not ask to see the note, and refuses to pay it on other grounds, this is a sufficient presentment to bind an indorser. * * *'"

We believe that the rule announced in that case is applicable here.

The plaintiff's original petition filed in this case on September 3, 1964, alleged: "* * * Defendants are approximately nine (9) installments past due on said note, and in accordance with the terms thereof the Plaintiff hereby accelerates and matures the remaining installments and demands payment on the full sum."

Plaintiff's second amended petition filed herein on May 26, 1969, and being plaintiff's pleading on which she went to trial, contained the same allegation reference to acceleration of the note.

It is the law in Texas that after a default has occurred in the payment of monthly installments provided for by a note, the mere filing of a suit on the note to collect the entire debt is a sufficient exercise of the option to accelerate by the holder of such note. See Dickson v. Dickson, supra; Gresham v. McElroy, 309 S.W. 2d 84 (Houston Civ.App., 1958, no writ hist.); and 9 Tex.Jur.2d p. 129.

We hold that the record reflects that the note was properly accelerated.

The Smiths' point 4 is that there was error of the trial judge in refusing to grant their motion to disregard the jury's answer to Issue No. 2. This issue inquired as to what would be a reasonable attorney's fee for plaintiff's lawyer. The jury's answer was $3,100.00.

Their point 5 is that the court's award of $3,100.00 as an attorney's fee is excessive. These two points are argued together.

As one basis for urging their point 4, the Smiths say that the assumption contract contained in the deed to them had no provision in it that made them liable for the attorney's fee provided for in the note and therefore they are not liable for attorney's fee.

We overrule this phase of point 4. The language of the deed to the Smiths relating to their agreement to assume the note in question is set out early in this opinion.

The Smiths agreed to become personally liable for the payment of the balance due plaintiff on the note. By this agreement the Smiths became liable for the attorney's fee provided for in said note. See Trabue v. Wade & Miller, 95 S.W. 616 (Tex.Civ.App., 1906, no writ hist.), and Tinsley v. Houston Land &

Trust Co., 36 S.W. 815 (Tex.Civ.App., 1896, writ ref.).

As another basis or grounds for urging their point 4 the Smiths say there is "no competent evidence" to support the amount awarded as attorney's fee.

In the motion to disregard the jury's answers to Issue No. 2, one ground urged was that there was no competent evidence offered during the trial that would support the jury's answer that $3,100.00 would be a reasonable fee for the services of plaintiff's lawyer.

The obligation of the Smiths to pay an attorney's fee to plaintiff in this case arose solely out of their agreement to assume the payment of the unpaid balance due on the note in question. Their obligation to pay attorney's fee would therefore be measured by the terms of the original note executed by the defendants, Mr. and Mrs. Herles, in favor of the plaintiff. The pertinent language in that note is as follows: "And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit or through Probate or Bankruptcy proceedings we agree to pay reasonable attorney's fees additional on the principal and interest then due hereon."

We are convinced that by the phrase "reasonable attorney's fees" as used in such note is meant "such a fee as would be reasonable for a litigant himself to pay his own attorney for prosecuting the case, and not a speculative or contingent fee based upon the uncertainty of the litigation." Southland Life Ins. Co. v. Norton, 5 S.W.2d 767 (Tex.Com.App., 1928), and City of Eastland v. Owen, 49 S.W.2d 534 (Eastland Civ.App., 1932, reversed on other grounds in 78 S.W.2d 178).

It is established law in Texas now that in a case where there is a question as to what would constitute a reasonable attorney's fee, such question is one of fact to be determined by the fact finder in the case, and in order to have a determination of such fact is must be supported by evidence. Great American Reserve Ins. Co. v. Britton, 406 S.W.2d 901 (Tex.Sup., 1966); Trevino v. American Nat. Ins. Co., 140 Tex. 500, 168 S.W.2d 656 (Tex.Com.App., 1943); and Johnson v. Universal Life & Accident Ins. Co., 127 Tex. 435, 94 S.W. 2d 1145 (Tex.Com.App., 1936); and Boaz Well Service, Inc. v. Carter, 437 S.W.2d 38 (Fort Worth Civ.App., 1969, no writ hist.).

The only evidence in the record as to what sum would constitute a reasonable fee for the services of plaintiff's attorney in the case was the testimony of attorney Henry Anderson. No questions at all were asked this witness as to his opinion as to what sum would constitute a reasonable attorney's fee for plaintiff's attorney within the meaning of the definition of "reasonable attorney's fee" that is herein before set out in this opinion.

The inquiry of this witness was as to his opinion as to what would be a reasonable attorney's fee on a contingent fee contract. To such inquiry he answered between one-third and 40% (of the amount of the recovery). We do not believe that this testimony has anything at all to do with the matter sought to be determined here. This witness' testimony shows, and all those connected with legal work know, that contingent attorney's fees are figured on a higher basis than attorney's fees are otherwise figured on when they are to be due and owing in all events.

In determining whether or not there is any competent evidence to support the jury's answer to Issue No. 2, the evidence in the record must be considered in the light most favorable to the way the jury answered the question. Only the evidence in the record that is favorable to the jury's answer can be considered and all evidence that is opposed to such finding and that which is contradictory in nature must be disregarded. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (Tex.Sup., 1950), and Robertson v. Robertson, 159 Tex. 567, 323 S.W.2d 938 (Tex.Sup., 1959).

Considering the evidence in this record in this light we are convinced that there is no reasonable basis in the record made on the trial of this case on which the jury would have been justified in answering $3,100.00 to Issue No. 2.

We therefore sustain the point being discussed and hold that the trial judge erred in refusing to grant the motion of the Smiths to disregard the jury's answer to Issue No. 2 which found that $3,100.00 would be a reasonable fee for plaintiff's attorney.

The plaintiff's counterpoint No. 4 asks this court to not consider the Smiths' point relative to their motion to disregard the jury's answer to Issue No. 2 of the charge on the grounds that it does not comply with the briefing rules.

We are required to overrule this request in view of the holdings in cases such as Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943), and Bell v. Currie, 404 S.W.2d 321 (Amarillo Civ.App., 1966, no writ hist.). By looking at the point in question and the statement and argument under such point we are able to tell what complaint is being made. Under such circumstances an appellate court is required to pass on such point, even though it might be general and of a scatter-barreled nature.

The Smiths' 5th point is that the court's $3,100.00 award of attorney's fee is excessive and should be reduced to comply with the applicable law.

They say the attorney's fee of $3,100.00 was excessive because (1) the attorney's fee of $3,100.00 was out of proportion to the amount of principal and interest due at the time the note was placed in the hands of a lawyer for collection and (2) such attorney's fee must be reasonably proportioned to the amount of principal and interest recovered in the judgment.

Both of these contentions are based on the theory that the rule of construction known as the "rule contra proferentem," previously discussed in this opinion, is applicable here requiring the assumption agreement to be construed in favor of the Smiths and against plaintiff and the Herles. We have previously overruled that contention and since the two contentions last mentioned above as being urged by the Smiths are wholly contingent upon such rule of construction being applied in this case, we overrule both of them.

They are urged on the theory that if such rule of construction was applicable, a proper judgment in the case would be much smaller than the one actually rendered. Therefore, they say that the proper amount of attorney's fee would be much smaller than the $3,100.00 figure because the amount thereof had to bear some reasonable relation to the amount of the judgment that is awarded.

We have held that the proper amount due was the $9,510.29 figure that the parties stipulated to and we believe that that figure is the one the attorney's fee had to bear some reasonable relation to.

We have discussed this question of the excessiveness of the attorney's fee because this question will arise again on a retrial of the attorney's fee issue.

The Smiths' 6th point contends that the trial judge erred in failing to sustain the four year statute of limitations plea of the Smiths, urged as a defense to the plea for indemnity of defendant, Herles.

We have been referred to no place in the record and by an independent search of it we have not been able to find where the trial judge was called on to pass on this limitation question.

The rule is that unless fundamental error is involved an appellate court will not consider matters that were not called to the attention of the trial judge and that were not acted on by that court. 3 Tex.Jur.2d, p. 377, Sec. 108; Baker v. Marable, 373 S.W.2d 377 (Eastland Civ. App., 1963, no writ hist.). A plea of limitation is considered as waived where it is not acted on in the lower court. 37 Tex. Jur.2d 384, Sec. 196.

We overrule point 6 for the reasons just set out.

There are other reasons why we overrule this point. The Smiths' brief says under their point 6 that it is germane to assignments Nos. 21, 22, 37 and 39 of their motion for new trial. We have examined these particular paragraphs and all others in the motion for new trial and find that none of them are germane to the matter that is complained of in point 6.

■ On an appeal from a judgment rendered in a jury trial such as this an appellant's points of error must be germane to a proper assignment of error contained in his motion for new trial. Nixon v. Nixon, 348 S.W.2d 438 (Houston Civ.App., 1961, writ dism.) and Donald v. Bennett, 415 S.W.2d 450 (Fort Worth Civ.App., 1967, ref., n. r. e.). See also 37 Tex.Jur. 2d 384.

■ Because the Smiths had no assignment of error germane to point 6 they are not entitled to have the matter reviewed.

There is still another defect in the Smiths' contention under this point.

■ A plea of limitation is an affirmative defense which is required to be pleaded under Rule 94, T.R.C.P. Pleadings in a district court are required to be in writing.

At the conclusion of the evidence, after the trial court had granted Mr. and Mrs. Herles leave to file a trial amendment asking for indemnity from the Smiths, he also granted leave to the Smiths to file a plea of the four year statute of limitations as a defense to such plea for indemnity. The Smiths' attorney dictated their proposed limitation plea to the court reporter and after the judge heard what such plea would be, he then granted the Smiths leave to file such a trial amendment urging the four year statute of limitations as a defense.

The record does not at any place reveal that the Smiths have up to this time ever had such plea of limitations reduced to writing and filed as a trial amendment in the case.

We hold that by such conduct of not having the plea reduced to writing and filed as a pleading in the case, that the Smiths waived the plea.

The Smiths' 7th point is that this case should be reversed because the trial judge rendered judgment for $12,610.29, together with 10% per annum interest thereon, which sum included $3,100.00 as attorney's fee. They say the attorney's fee part of the judgment is only entitled to bear 6% interest and not 10% as was awarded.

We will write on this point in view of the fact that the attorney's fee feature of the case will be retried.

The note in question provides that the principal shall bear interest at the rate of 7% per annum. It also provides that all past due interest and principal shall bear interest at the rate of 10% per annum.

The note then provides: "And it is hereby specially agreed that if this note is placed in the hands of an attorney for collection, * * * we agree to pay reasonable attorney's fees additional on the principal and interest then due hereon."

The note in question does not have any special provision providing a rate of interest that the attorney's fee part of a judgment such as this should draw.

A number of cases have been decided in Texas that have held that in instances where the note in question provided for a certain percentage of the principal and interest that were due at the time of judgment to be awarded to plaintiff and added to the judgment as an attorney's fee, that in those instances the attorney's fee part of the judgment would also draw interest in the judgment at the same rate that had been agreed on to be paid on past due principal and interest.

Such holdings have been on the theory that the attorney's fee provided for were incident to the main debt and so connected

with the principal of the note that an agreement to make the fee a part of the principal to draw like interest with it will be implied.

A group of these cases are cited in 33 Tex.Jur.2d 78 (footnote 5) and see Tsesmelis v. Sinton State Bank, 53 S.W.2d 461 (Tex.Com.App., 1932).

The case at bar is distinguishable from that group of cases. The note in question provided for a "reasonable" attorney's fee. The agreement in the note involved here was for an unliquidated amount to be recovered as attorney's fee.

In the case of Stanton v. Security Bank & Trust Co., 244 S.W. 593 (Tex.Com.App., 1922), the Commission of Appeals had before it this same question. The note in that case had a provision whereby the maker agreed that if the note was not paid when due, he would pay the costs of collection, including attorney's fees. It also provided for payment of 10% interest on the principal from maturity until paid.

The Commission of Appeals in that case held that since the note contained no provision for the payment of any interest on the attorney's fees, the statute providing for interest on judgments controls in instances where the note was worded as that one was.

The only two Texas Statutes that could in any way be applicable to a decision of this point are Articles 5070 and 5072 of V.A.C.S.

Article 5070, Vernon's Ann.Civ.St., provides: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed * * *."

Article 5072, V.A.C.S., provides: "All judgments of the courts of this State shall bear interest at the rate of six per cent per annum from and after date of judgment, * * *."

In every case we have read that allowed a recovery in the judgment of interest in excess of the statutory rate on the part of the judgment that was for attorney's fees the note involved was worded so that it provided for recovery of a certain percentage of the past due principal and interest as an attorney's fee.

We have found no case where the note provided for the recovery of a "reasonable" attorney's fee that allowed a recovery of interest in excess of the statutory rate on the part of the judgment that represented attorney's fees.

We are of the opinion that the holding in the Stanton v. Security Bank & Trust Co. case, supra, is applicable to and controls a decision of this point in this case.

We hold that the trial court erred in allowing 10% interest, instead of just 6%, on that part of the judgment that represents a recovery of attorney's fees.

By their 8th point the Smiths contend that the judgment should be reversed because the trial court erred in excluding the testimony of Truman Smith to the effect that he and his brother, Coy, had a custom and practice at the time in question to take property in trade subject to any outstanding debt against such property.

The trial court excluded such offer of evidence at a time when Truman Smith was on the stand and while he was being examined by his own counsel.

However, while this same witness was on the stand being cross-examined by plaintiff's counsel the questions and answers hereinafter set out were given.

"A. I was relying on a title lawyer to go by the terms of the contract.

"Q. And so you didn't bother to check the papers?

"A. No.

"Q. Although you are very careful apparently in your transactions when you take property to get the words 'subject to' in there?

"A. That's right."

This evidence was thus put before the jury at this point in this manner for all purposes.

We deem the last question and answer to furnish substantially the same evidence from this same witness, Truman Smith, that complaint is being made about in the Smiths' point No. 8.

A Mrs. Stearman was a witness in the case. She was placed on the witness stand by the Smiths. She was a realtor and had sold a lot of houses for the Smiths. While on the stand she gave the testimony here set out:

"Q. Did Mr. Smith tell you to put 'subject to'—

"A. He always,—'subject to'.

"Q. And so knowing how he wanted it handled, you were doing that because that's the way he wanted it done?

"A. Always in all of his contracts of all the houses I have sold for him, they were 'subject to.' "

This evidence was also admitted without objection and we deem it to be evidence of substantially the same facts that the trial judge had previously excluded that is being complained of in the Smiths' point 8.

The Smiths brief their eighth and ninth points together. The ninth point contends that the trial judge erred in refusing to permit this witness, Truman Smith, to testify that there was a custom and practice of the building trade in Wichita County, Texas, to take property in trade subject to any outstanding debt against it instead of assuming the debt.

This offer of evidence was made while Truman Smith was being examined by his own counsel. The trial judge excluded the evidence and the Smiths perfected a bill of exceptions on it.

However, while this same witness was being cross-examined by plaintiff's counsel, he was asked this question:

"Q. And you know that most people probably wouldn't know (speaking of the words 'subject to') it is a technical term with a peculiar meaning, you know that don't you?"

To this question Mr. Smith gave the following unresponsive answer: "Well, you and I both know, Mr. Oldham, that every—ninety-nine per cent of the builders in the building business do this, this is a common practice, isn't that right?"

This evidence went before the jury at this point without objection and we deem it to be substantially the same evidence that was excluded that is being complained of in the Smiths' point No. 9.

■ We therefore overrule the Smiths' points Nos. 8 and 9. In so doing it is not necessary for us to pass on the question of whether the evidence referred to in both of those points is or is not admissible. We overrule both of these points because even if we assume that both items of evidence were admissible, as contended by the Smiths, and that the court erred in excluding it, the exclusion of such evidence under the facts of this case still does not present reversible error because of the settled rule that error, if any, in excluding evidence is harmless where evidence substantially the same is otherwise admitted during the trial.

This is exactly what happened in this case.

For a great number of cases that have followed this rule see Texas Digest, Vol. 4B, Appeal & Error, ☞1058, beginning at p. 334.

In other words, error, if any, in excluding certain evidence is cured where the facts sought to be proved are otherwise shown before the end of the trial. La Grange & Lockhart Compress Co. v. Hart, 169 S.W. 373 (Austin Civ.App., 1914, error ref.).

The Smiths' points numbered 10 through 25 complain of various actions of the trial

court in sustaining objections of plaintiff's counsel to their lawyer's argument.

The statement, argument and authorities of the Smiths on these points are all grouped together. All of these points are very general and do not show what the argument complained of was nor the objection that was urged nor the ruling of the court. Each point refers the court back to the statement of facts to find the arguments complained of and the objections made and the court's rulings.

In the statement under this group of points that are briefed and argued together it is stated that the principal gist of the defendants Smiths' argument that is material here was that someone at the title company prepared the relevant papers and was relied on by all parties as doing so correctly and that the relevant evidence itemized in the argument fairly inferred that such person who prepared the instrument probably did not know all the true terms of the deal.

The case of Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943), holds that if a point is sufficient to direct a court's attention to the matter complained of, then the court will look to the point and the statement and argument under it to see if there is reversible error.

We overrule Point No. 11 because the record does not show that the trial judge sustained an objection to such argument.

Point No. 19 refers us to "argument as set out at the top of page 252, Statement of Facts" to which the court sustained an objection. There being no such argument at the place referred to we overrule the point.

An examination of the statement of facts leads us to the conclusion that the arguments complained of in the Smiths' Points Nos. 16, 17, 18, 20, 22 and 23 are in the category of not being briefed. Such points do not complain of argument that fall in the category that the Smiths' statement and argument given under the entire group of points say they are complaining of. The arguments there complained of are unrelated and not germane to the arguments that are complained of in the other points of error that are being briefed in that group. We believe that considering the manner in which these Points Nos. 16, 17, 18, 20, 22 and 23 have been presented to us that all we have from the Smiths relevant to them are the points themselves referring us to a part of the statement of facts to see what the argument was. We hold that the Smiths waived these 6 points by failing to brief them. Weatherred v. Kiker, 357 S.W.2d 182 (Amarillo Civ.App., 1962, ref., n. r. e.) and Hall v. Hall, 352 S.W.2d 765 (Houston Civ.App., 1962, no writ hist.).

We believe we are required to consider the Smiths' Points Nos. 10, 12, 13, 14, 15 and 21, under the holding in the Fambrough case, supra. We can, by looking at the statement under the whole group of points, tell that the gist of the argument excluded by the court and which action is complained of in these points was twofold: (1) that someone at the title company prepared the relevant papers and was relied on by all parties to do so correctly, and (2) that the relevant evidence itemized in the argument fairly inferred that such person who prepared the instruments probably did not know all the true terms of the deal between the parties.

We believe that argument such as this would have constituted reasonable inferences to be drawn from the evidence in the case and that such argument was proper argument on the issue of mutual mistake. We also believe that the trial court erred in sustaining the plaintiff's objections to such argument.

From the record it appears to us that these 6 points numbered above all relate to counsel's efforts to put over the one point set out in the second paragraph above as being the gist of the offered argument. It seems that counsel would start out to make such argument and an objection

would be made and sustained. The Smiths' counsel would then start back to argue the same point in different words and meet another objection and adverse ruling. It occurs to us that what we really have here is 6 instances where the court sustained objections to argument of Smiths' counsel wherein he made 6 different attempts to argue and put over the one contention relative to the person at the title company that drew the deed probably not knowing what the real deal between the parties was.

However, we are of the opinion that the trial judge's rulings on this argument was not reversible error under Rule 434, Texas Rules of Civil Procedure. The error or errors relative to the argument in question did not amount to such a denial of the Smiths' rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

The Smiths' Point 24 says the court erred in repeatedly sustaining objections to their lawyer's argument.

Their Point No. 25 is to the same effect, but for a different reason.

As indicated herein we hold that no reversible error was committed in connection with the argument. Such points are overruled.

We have concluded that there is no reversible error in this case except in so far as the award of attorney's fees is concerned. The attorney's fee feature of the case is severable from the rest of the case. Great American Reserve Ins. Co. v. Britton, supra, and Boaz Well Service, Inc., v. Carter, supra.

Under the facts of this case the plaintiff is entitled to recover a reasonable attorney's fee, the amount and the reasonableness of which has to be determined by the fact finder in the trial court.

We reverse and remand for a new trial that part of the judgment appealed from which purports to award plaintiff a recovery of $3,100.00, plus interest thereon, as an attorney's fee. We affirm the rest of the trial court's judgment, after deducting from the amount thereof the $3,100.00 that represented the attorney's fee.

One-half of the costs of this appeal are hereby taxed against the plaintiff, Mrs. Davis. All of the costs in the court below and one-half the costs of this appeal are taxed against the Smiths.

## ON MOTION FOR REHEARING

We hereby withdraw the last paragraph of our original opinion and substitute the following paragraph for it:

"The costs of the appeal are taxed one-half against Mrs. Davis and the other one-half against Truman Smith and Coy B. Smith. The costs in the trial court are taxed as they were by the trial judge, such trial court decree providing in substance that all costs in the trial court would be taxed against Truman Smith, Coy B. Smith, Edward T. Herles and wife, Shirley K. Herles, jointly and severally."

Except as indicated by this change, the motion for rehearing filed herein by Truman Smith and Coy B. Smith is overruled.